**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | Case No. | 23-20429 (JJT) |
| | ) | | |
| BRIAN P. GATES | ) | Chapter | 13 |
| | ) | | |
| Debtor. | ) | Re: ECF No. | 4, 13, 24, 27, 29 |
| | ) | | |

**MEMORANDUM OF DECISION ON DEBTOR'S MOTION FOR CONCURRENT PETITIONS, CREDITOR MMP HOLDINGS, LLC's MOTION TO DISMISS, AND CREDITOR CHELSEA GROTON BANK'S JOINDER MOTION FOR IN REM RELIEF**

**I.   INTRODUCTION**

Before the Court are three competing motions.  The first is a Motion for Permission for Concurrent Petitions wherein the Debtor, Brian P. Gates, requests that the Court permit the proceeding of this present Chapter 13 case (the "Second Bankruptcy") concurrent with his pending Chapter 7 case (Case No. 22-20337, the "First Bankruptcy").  ECF No. 4 (the "Debtor's Motion").  The second is creditor MMP Holdings, LLC's ("MMP") Motion to Dismiss and for Sanctions, wherein MMP requests that the Court dismiss this case pursuant to 11 U.S.C. § 1307(c) and impose sanctions on both the Debtor and his counsel as a consequence of their alleged bad faith in filing this Second Bankruptcy case.  ECF No. 13 ( "MMP's Motion").  Third, creditor Chelsea Groton Bank ("CGB") joins in MMP's Motion and also requests (either additionally or alternatively to MMP's requested relief) that the Court issue an *in rem* order to permit the foreclosure of the Debtor's home.  ECF No. 24 (the "CGB Joinder").  Creditor Doctor Timothy Owens ("Dr. Owens") also joins in MMP's Motion.  ECF No. 27 (the "Owens Joinder").  Lastly, MMP is joined by the Chapter 13 Trustee in support of dismissing this case, although she declines to join in MMP's request for sanctions.  ECF No. 29 (the "Trustee's

Joinder). The Court heard arguments and evidence on MMP's Motion on June 23, 2023, and subsequently heard further arguments and evidence on the Debtor's Motion on June 29, 2023.

For the reasons stated herein, the Debtor's Motion is denied. MMP's Motion is granted insofar as it requests dismissal of this Second Bankruptcy with a one (1) year bar, and denied insofar as MMP requests the imposition of sanctions on the Debtor and his counsel; similarly, the CGB Joinder shall be granted insofar as it requests both dismissal of this case and *in rem* relief, and denied insofar as it requests the imposition of sanctions on the Debtor and his counsel; the Owens Joinder shall be granted insofar as it requests dismissal of this case and denied insofar as it requests the imposition of sanctions on the Debtor and his counsel. The Trustee's Joinder shall be granted.

## II.   JURISDICTION

The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (case administration)and (G) (motions to terminate, annul, or modify the automatic stay).

## III.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

This Second Bankruptcy is inextricably connected to the Debtor's First Bankruptcy, and while the facts of that proceeding are well known to the parties, the Court shall provide the requisite background of both the First Bankruptcy and this present matter to better contextualize the Debtor's Motion, MMP's Motion, and the CGB Joinder. Unless otherwise noted, the facts below have been stipulated by the Debtor, MMP, CGB, Dr. Owens, and the Chapter 13 Trustee in connection with this case.

1. On or about December 8, 2015, CGB made a loan to Gates Realty Holdings, LLC ("Gates Realty"), evidenced by a Note in the original principal amount of $1,794,465.00 (the "CGB Loan"). Stipulation of Facts for Hearing on Mot. to Dismiss at 1, ECF No. 34 ("Stipulation").

2. To secure the CGB Loan, Gates Realty executed a Commercial Open-End Mortgage Deed dated December 8, 2015, granting CGB a first priority mortgage on property located at 15 Elm Street, Mystic, Connecticut (the "Spicer Mansion Property"). *Id.*

3. To further secure the CGB Loan, the Debtor and his wife, Ulrika Gates ("Mrs. Gates"), among others, executed a Guaranty. *Id.* To secure the Guaranty, the Debtor and Mrs. Gates granted CGB a mortgage on their home located at 116 Cove Road, Stonington, Connecticut (the "Cove Road Property"). *Id.*

4. On or about June 6, 2018, MMP made a loan to Gates Realty, evidenced by a Note in the original principal amount of $585,000.00 (the "First MMP Loan"). *Id.*

5. To secure the First MMP Loan, Gates Realty executed a Mortgage Deed and Security Agreement through which it mortgaged the Spicer Mansion Property to MMP. *Id.* at 2.

6. Both the Debtor and Mrs. Gates are co-makers and co-obligors of the First MMP Loan. *Id.*

7. On or about December 13, 2018, MMP made another loan to Gates Realty, evidenced by a Note in the original principal amount of $125,000.00 (the "Second MMP Loan"). *Id.*

8. To secure the Second MMP Loan, Gates Realty executed a Mortgage Deed and Security Agreement through which it mortgaged the Spicer Mansion Property to MMP. *Id.*

9. Both the Debtor and Mrs. Gates guaranteed the Second MMP Loan. *Id.*

10. Dr. Owens claims an interest in the Spicer Mansion Property by virtue of a mortgage deed dated December 31, 2018, which acts to secure a Promissory Note of even date in the amount of $450,000.00 (the "Owens Note"). *Id.*

11. Dr. Owens also claims an interest in the Spicer Mansion Property by virtue of a Lis Pendens which indicates that on July 19, 2019, he initiated an action in the Superior Court for the Judicial District of New London (the "Superior Court") in which he seeks to enforce the Owens Note and in which he has applied for a prejudgment remedy attachment on the Spicer Mansion Property. *Id.*

12. In the fall of 2019, MMP, CGB, and Dr. Owens (together, the "Secured Creditors") each filed an action in the Superior Court seeking, *inter alia*, to foreclose their mortgages on the Spicer Mansion Property. *Id.*

13. In its foreclosure action, CGB also sought to foreclose its mortgage on the Cove Road Property. *Id.*

14. The Superior Court consolidated the foreclosure actions initiated by MMP and Dr. Owens into CGB's foreclosure action (*see Chelsea Groton Bank v. Gates Realty Holdings, LLC*, No. KNL-CV-19-6043532-S (Conn. Super. Ct. 2019)). *Id.*

15. On November 18, 2021, in connection with the CGB foreclosure action, the Secured Creditors, Gates Realty, the Debtor, and others entered into a Stipulated Judgment of Foreclosure By Sale (the "Foreclosure Stipulation") with a January 29, 2022 scheduled sale date of the Spicer Mansion Property. *Id.* at 3.

16. On November 23, 2021, the Superior Court entered judgment in the CGB foreclosure action in accordance with the Foreclosure Stipulation. *Id.*

17. The Foreclosure Stipulation encompasses both the Spicer Mansion Property and the Cove Road Property, as well as three other properties which secured the CGB Loan (*see* Compl. at 9, 12, *Chelsea Groton Bank v. Gates Realty Holdings, LLC*, No. KNL-CV-19-6043532-S (Conn. Super. Ct. 2019) and were held by a limited liability company of which the Debtor is an officer (*see* Mem. in Support of Mot. for Summ. J. Exh. A, at 23, *Chelsea Groton Bank v. Gates Realty Holdings, LLC*, No. KNL-CV-19-6043532-S (Conn. Super. Ct. 2019). The Foreclosure Stipulation includes the following material provisions regarding marshaling of the collateral securing the CGB Loan:

> "5. Upon the granting of this motion, a judgment of foreclosure by sale will enter in favor of the Plaintiff [CGB] as to all counts of the Plaintiff's Complaint, with the following sale dates being set:
>
> a. As to 15 Elm Street, Mystic, CT (Count One), January 29, 2022 (no committee work or fees incurred until January 5, 2022; and
>
> b. As to 116 Cove Road, Stonington, CT (Count Two), 32-44 Norwich Road, Plainfield, CT (Count Three), and 118 School Road, Putnam, CT and 18 South Main Street, Putnam, CT (Count Four), March 19, 2022;
>
> 6. To the extent that the proceeds of the sale of the 15 Elm Street property are sufficient to satisfy the debts of all creditors having an interest in that property, the parties hereby agree to forego the sales of the remaining properties and take all necessary actions to cancel such sales . . . ." *Id.*

18. On March 12, 2022, with the Debtor and Gates Realty unable to secure a ready, willing, and able buyer or a replacement lender for the Spicer Mansion Property despite months of efforts , the Court-appointed committee (the "Sale Committee") held a foreclosure sale of the Spicer Mansion Property (the "First Spicer Mansion Sale"). After five rounds of bidding, the successful bid was $3,520,000. *Id.*

19. The successful bidder failed to close on the First Spicer Mansion Sale. *Id.* The Court has taken judicial notice that, in connection with a pending appeal related to CGB's

foreclosure action and its efforts to avert a forfeiture of its deposit of $367,000.00 (*see* Deposit Receipt, Entry No. 160.00, *Chelsea Groton Bank v. Gates Realty Holdings, LLC*, No. KNL-CV-19-6043532-S (Conn. Super. Ct. 2019)), the defaulting bidder represented that it had an "undisclosed arrangement" with the Debtor and that the Debtor failed to honor his commitments in connection with that arrangement.

20. On May 20, 2022, one day before a scheduled foreclosure sale of the Cove Road Property, the Debtor filed the First Bankruptcy in this Court pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code. *Id.* at 4.

21. In connection with the First Bankruptcy, CGB filed a proof of claim asserting a secured claim in the amount of $2,051,147.93. *Id.* No objection has been asserted with regard to that proof of claim. *Id.*

22. In connection with the First Bankruptcy, MMP filed a proof of claim asserting a secured claim in the amount of $1,090,722.96. *Id.* No objection has been asserted with regard to that proof of claim. *Id.*

23. In his Schedules filed in connection with the First Bankruptcy, the Debtor lists Dr. Owens as having a claim in the amount of $400,000.00 secured by the Spicer Mansion Property. *Id.* Dr. Owens claims additional interest and attorney's fees in addition to that amount. *Id.*

24. Prior to filing the First Bankruptcy, the Debtor and Mrs. Gates jointly owned the Cove Road Property. *Id.*

25. The Debtor's interest in the Cove Road Property is now property of his Chapter 7 bankruptcy estate. *Id.* In the First Bankruptcy, the Court granted both CGB and Charter Oak Federal Credit Union ("COFCU") relief from the automatic stay to continue foreclosure

6

proceedings on the Cove Road Property. *Id.*

26. Prior to filing the First Bankruptcy, the Debtor owned one hundred percent (100%) of the membership interest in Gates Realty. *Id.*

27. The Debtor's membership interest in Gates Realty is now property of his Chapter 7 bankruptcy estate. *Id.*

28. Prior to filing the First Bankruptcy, the Debtor owned one hundred percent (100%) of the membership interest in Spicer Management, LLC. *Id.* at 5.

29. The Debtor's membership interest in Spicer Management, LLC is now property of his Chapter 7 bankruptcy estate. *Id.*

30. Prior to the sale of the Spicer Mansion Property, Gates Realty owned the Spicer Mansion Property. *Id.*

31. Prior to the filing of the First Bankruptcy, Spicer Management, LLC owned certain personal property located at the Spicer Mansion Property. *Id.*

32. On June 6, 2022, CGB filed its Motion for Relief from Stay as to the Spicer Mansion Property (ECF No. 13, Case No. 22-20337, the "First Stay Relief Motion"). *Id.*

33. The Court held hearings on the First Stay Relief Motion on July 7, 2022 and July 18, 2022 and directed the parties to file statements concerning the payment of adequate protection. *Id.*

34. On July 8, 2022, the Debtor filed his Notice of Debtor's Willingness to Pay Adequate Protection Payments (ECF No. 44, Case No. 22-20337, the "Notice"). *Id.* The Debtor proposed to make adequate protection payments in the following amounts beginning on July 21, 2022: (i) CGB in the amount of $10,000.00 per month; (ii) MMP in the amount of $10,000.00 per month; and (iii) Dr. Owens in the amount of $1,000.00 per month. *Id.*

35. On July 21, 2022, the Court issued its Ruling After Preliminary Hearing on Motion for Relief from Stay (ECF No. 57, Case No. 22-20337) in which it ordered the Debtor, *inter alia*, to make monthly adequate protection payments commencing on July 21, 2022 in accordance with the Debtor's July 8, 2022 Notice. *Id.*

36. While the Debtor made some of the mandated adequate protection payments on July 21, 2022, he did not make the required $10,000.00 payment to CGB. *Id.* at 6.

37. On July 26, 2022, CGB filed its Second Motion for Relief from Stay as to the Spicer Mansion Property (ECF No. 59, Case No. 22-20337, the "Second Stay Relief Motion"), documenting the Debtor's failure to make the required adequate protection payment to CGB on or before July 21, 2022. *Id.*

38. On August 1, 2022, the Court entered its Order on Movants' First and Second Motions for Relief from Stay and the Enforcement of the Prior Ruling of this Court (ECF No. 66, Case No. 22-20337, the "CGB Stay Relief Order"), terminating the automatic stay to allow CGB to proceed with prosecution of its foreclosure action consistent with the terms of the Foreclosure Stipulation.[1] *Id.*

39. On September 9, 2022, the Subchapter V Trustee (the "Sub V Trustee") filed a Motion to Convert, seeking to convert the Debtor's First Bankruptcy to a case under Chapter 7 of the Bankruptcy Code. ECF No. 86, Case No. 22-20337. The Sub V Trustee noted substantial or continuing loss to or diminution of the bankruptcy estate and the absence of reasonable likelihood of rehabilitation; the Debtor's failure to timely provide information or attend meetings reasonably requested by the United States Trustee; the Debtor's failure to

---

[1] The CGB Stay Relief Order granted broad and extensive relief to the Secured Creditors to proceed so as to discourage arguments by the Debtor in state court that might otherwise impede or frustrate the advancement and timely recovery by those lenders, almost four (4) years after the pertinent foreclosures commenced.

8

timely pay taxes owed; and the Debtor's failure to file a Disclosure Statement and/or to file or confirm a Chapter 11 Plan of reorganization as sufficient cause for conversion of the First Bankruptcy. *Id.*

40. On October 27, 2022, the Court, having found sufficient cause and upon the assent of the Debtor, entered an Order converting the First Bankruptcy to a case under Chapter 7 of the Bankruptcy Code. ECF No. 102, Case No. 22-20337. On November 2, 2022, the United States Trustee appointed Bonnie Mangan as Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Chapter 7 Trustee"). Stipulation at 6, ECF No. 34.

41. On December 23, 2022, the Chapter 7 Trustee filed a Motion for Entry of an Order to Compel Debtor to Turnover Property of the Estate and Related Relief Pursuant to 11 U.S.C. §§ 342 and 343 (ECF No. 131. Case No. 22-20337), where the Chapter 7 Trustee sought to compel the Debtor to cease all sales of assets and fixtures located at the Spicer Mansion Property and to turn over to the Chapter 7 Trustee all proceeds from the sales that had occurred. *Id.*

42. On January 4, 2023, this Court entered its Interim Order Granting Trustee's Motion for Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 105(a), 542 and 543 and Other Relief (ECF No. 143, Case No. 22-20337). Following the entry of that Order, the Debtor and his foreclosure counsel turned over all proceeds of the sale to the Chapter 7 Trustee. *Id.* at 7.

43. Judicial notice of the pleadings in the First Bankruptcy reveals that the aforementioned assets and fixtures belong to Spicer Management, LLC subject to its secured creditors' claims. Those creditors assented to the sale free and clear of liens on said property

with all liens attaching to the proceeds of said sale.[2]

44. On March 17, 2023, COFCU filed its Amended Motion for Relief from Stay (ECF No. 195, Case No. 22-20337), seeking relief from stay to continue prosecution of its action to foreclose its first mortgage on the Cove Road Property. *Id.*

45. On May 5, 2023, the Court entered an Order (ECF No. 213, Case No. 22-20337, the "Charter Oak Stay Relief Order"), granting relief from the automatic stay pursuant to 11 U.S.C. § 361(d)(1) in favor of COFCU to allow it to continue with foreclosure of its first mortgage on the Cove Road Property. *Id.*

46. On April 26, 2023, the Court entered an Order of Discharge (ECF No. 208, Case No. 22- 20337), granting the Debtor a discharge in connection with the First Bankruptcy. *Id.*

47. Following entry of the CGB Stay Relief Order, the Superior Court in the CGB foreclosure action set October 22, 2022 as the new date for the auction sale of the Spicer Mansion Property. *Id.*

48. On October 22, 2022, the Sale Committee conducted an auction of the Spicer Mansion Property. The Sale Committee received three (3) bids for the property and designated MMP as the winning bidder with a bid in the amount of $3,050,000.00. *Id.* By Order dated November 7, 2022, the Superior Court approved the sale. *Id.* MMP subsequently transferred its winning bid to Captain's Mansion, LLC, which closed on the sale of the Spicer Mansion Property. *Id.*

---

[2] There exist liens of record in favor of American Express National Bank; State of Connecticut, Department of Labor, Employment Security Division; and United States Department of Treasury, Internal Revenue Service. The Trustee disputes the validity of a lien held by Richard Malafronte. The subject liens in said personal property assets and fixtures are unpaid and unadjudicated in the First Bankruptcy.

49. The net proceeds from the sale of the Spicer Mansion Property were insufficient to pay the Secured Creditors in full. *Id* at 8.

50. Consistent with the Foreclosure Stipulation, the proceeds from the sale of the Spicer Mansion Property currently remain on deposit with the Superior Court pending the sale of the other collateral properties. *Id.*

51. On January 13, 2023, CGB filed a motion in its foreclosure action seeking to reset the sale of the Cove Road Property. *Id.* On March 23, 2023, the Superior Court entered an Order setting June 3, 2023 as the new sale date for the Cove Road Property. *Id.*

52. Late in the afternoon on June 2, 2023 (the day before the scheduled foreclosure sale of the Cove Road Property), the Debtor filed the instant Chapter 13 bankruptcy case. *Id.*

53. According to the Schedules filed by the Debtor in the Second Bankruptcy, the Debtor owed the following amounts secured by the Cove Road Property: (i) American Express in the amount of $29,450.88; (ii) Channing Real Estate, LLC in the amount of $976,599.13; (iii) COFCU in the amount of $364,744.06; (iv) CGB in the amount of $86,501.49; (v) Elavon, Inc. in the amount of $20,509.17; and (vi) Scient Federal Credit Union in the amount of $12,000.00. *Id.*

54. The Debtor lists a second claim by CGB secured by the Cove Road Property but assigns no value to that claim because the Debtor asserts that the claim will be paid from proceeds of the sale of the Spicer Mansion Property. *Id.*

55. The appraised value of the Cove Road Property as of June 7, 2021 was $1,200,000.00. *Id.* The Debtor's Schedules also valued the Cove Road Property at $1,200,000.00 in his First Bankruptcy (ECF No. 1, Case No. 22-20337) and Second Bankruptcy (ECF No. 1).

56. According to the Debtor's Schedules in the First Bankruptcy, Mrs. Gates' net income was $4,333.00 at the time the Debtor filed the First Bankruptcy. Stipulation at 9, ECF No. 34.

57. At the time he filed the Second Bankruptcy, according to Schedules I and J, Mrs. Gates' monthly net income was $6,347.00 and his household's monthly net income was $4,648.70. *Id.*

58. Mrs. Gates' income as reported on Schedules I and J filed by the Debtor in the Second Bankruptcy does not appear consistent with the paystubs submitted as Debtor's Exhibit 13, which indicate a weekly salary of $1,000.00 for the period January 2 through May 22, 2023. *Id.*

59. The Chapter 13 Plan (the "Plan") filed by the Debtor in the Second Bankruptcy purportedly proposes to cure an arrearage on a mortgage secured by Cove Road Property by paying $206,000.00 to COFCU (the "Residential Mortgage").[3] *Id.*

60. According to a Motion for Relief from Stay filed by COFCU in the First Bankruptcy, the amount necessary to cure the default in the Residential Mortgage was $209,362.49. *Id.*

61. The Plan states there are no priority claims.[4] *Id.*

62. According to the report of sale filed by the Chapter 7 Trustee in the First Bankruptcy, she liquidated assets for approximately $100,000.00. *Id.*

63. The Department of the Treasury, Internal Revenue Service claimed priority debt of $133,061.94 (estimated for the years 2020–2021) in the First Bankruptcy. *Id.* at 10.

---

[3] The Plan does not speak to the Debtor's unfiled tax returns, the requisite payment of real property taxes due by July 31, 2023 or to any arrangements for the insurance on the subject property.

[4] The Plan assumes, without sufficient basis, that the Chapter 7 Trustee will satisfy any taxes due.

64. The Connecticut Department of Revenue Services claimed priority debt of $91,635.42 (estimated for years 2020–2021) in the First Bankruptcy. *Id.*

65. Deducting the full proceeds of the sale of the assets by the Chapter 7 Trustee in the First Bankruptcy, without any accounting for her costs of sale or commission and based on the proofs of claim filed in the First Bankruptcy, produces priority debt of $93,353.70 (the "Estimated Priority Debt"). Correction to Limited Joinder in Mot. to Dismiss Case for Cause at 1, ECF No. 37.

66. The Plan proposes graduated payments of $4,000.00 for six (6) months and $8,591.00 for fifty-four (54) months, for a total of $487,914.00. Stipulation at 10, ECF No. 34.

67. During the evidentiary hearing on MMP's Motion held June 23, 2023, the Debtor provided, at best, a hopeful explanation for how he expects to bridge the gap between his income and his proposed payments under the Plan. ECF No. 36. The Debtor testified that he expects his income to increase as his new business endeavors advance. *Id.*

68. According to Schedules I and J of the petition filed in Second Bankruptcy, the Debtor now works as an "Ambassador" for Project Freedom Villages, LLC. Stipulation at 10, ECF No. 34.

69. The Chapter 13 Trustee conducted an online business search for Project Freedom Villages, LLC on the website of the Secretary of the State of the State of Connecticut, which yielded only Freedom Villages, Inc.[5] *Id.*

---

[5] Internet publication of a governmental document on an official website constitutes an "official publication" within Federal Rule of Evidence 902(5). Under Rule 902(5), official publications of government offices are self-authenticating.

70. The Chapter 13 Trustee performed a Google search for Project Freedom Villages, LLC which produced the website "projectfreedomvillages.com" and an article from the Erie Times-News published on October 19, 2022 that mentioned the Debtor and discussed a project involving building tiny homes. *Id.* at 11.

71. The Chapter 13 Trustee performed a search for Project Freedom Villages on the website of the Secretary of the State of the Commonwealth of Pennsylvania, which did not produce any results. *Id.*

72. The Chapter 13 Trustee clicked on the "Contact Us" link of projectfreedomvillages.com, which refers inquiries to Brian@projectfreedomvillages.com. *Id.*

73. In response to Question 4 of the Statement of Financial Affairs filed in the Second Bankruptcy, the Debtor states that he derived income from wages in 2023, and not from the operation of any business. *Id.*

74. During the evidentiary hearing held on MMP's Motion on June 23, 2023, the Debtor (i) did not produce any financial statements or pro forma business plan regarding his proposed business endeavors; (ii) did not produce any contractual documents to the Court or to the Chapter 13 Trustee as to his proposed business endeavors; (iii) did not produce any corroborating evidence from putative business partners as to his proposed business endeavors; (iv) did not produce evidence of the current financial liquidity of his proposed business endeavors; and (v) did not produce evidence of any building permits or a timeframe for his proposed construction projects. ECF No. 36.

75. During the evidentiary hearing held on the Debtor's Motion on June 29, 2023, the Chapter 7 Trustee made an uncontested proffer that (i) she was still investigating the assets and liabilities (including potential avoidance actions) of the Chapter 7 bankruptcy estate; (ii)

she has not distributed funds owed to the relevant taxing authorities or paid estate professionals; (iii) she has not allocated or distributed sale proceeds of the personal property and fixtures of the Spicer Mansion Property to lien creditors; (iv) the Debtor has not yet filed all tax returns required by the Chapter 7 Trustee to complete administration of the bankruptcy estate; and (v) litigation is still pending in the Superior Court regarding rights to a "forfeited" deposit in connection with the failed sale of the Spicer Mansion Property, and (vi) the Superior Court has yet to adjudicate the distribution and allocation of the sales proceeds to the Secured Creditors from the sale of the Debtor's properties. ECF No. 41.

## IV. DISCUSSION

It is well-established that "[t]he determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court." *In re Carcia*, 578 B.R. 495, 500 (Bankr. D. Conn. 2017). In making that determination, courts are to consider the totality of the circumstances surrounding the relevant bankruptcy petition. *Id.* at 499–500. "The totality of the circumstances should take into consideration whether the debtor has abused the provision, purpose or spirit of the Bankruptcy Code and whether the filing is fundamentally fair to creditors." *Id.* at 500 (internal quotation marks omitted) (quoting *In re Armstrong*, 409 B.R. 629, 634 (Bankr. E.D.N.Y. 2009)). In addition, "[w]here a party calls into question a debtor's good faith and meets their initial burden of showing cause for dismissal, the burden shifts to the debtor to prove [his] good faith." *Id.* (citing *In re Lombardo*, 370 B.R. 506, 513 (Bankr. E.D.N.Y. 2007)).

Having reviewed the record of both the First Bankruptcy and the Second Bankruptcy, the Court is satisfied that the totality of circumstances supports a finding that the Debtor's Second Bankruptcy was filed in bad faith and that the case should ultimately be dismissed. The Court is

further satisfied that MMP has met its burden of showing cause for dismissal, and that the Debtor insufficiently failed to prove good faith in this Second Bankruptcy. First, the Debtor's proposed Plan simply does not provide sufficient payments to satisfy the Estimated Priority Debt and the mortgage arrearage on the Cove Road Property; whereas payment of those amounts would require a plan payment of $8,535.40 over a period of sixty (60) months (a total of $512,124.00), the Debtor only proposes a graduated payment plan of $4,000.00 per month for six (6) months and $8,591.00 per month for fifty-four (54) months (a total of $487,914.00). The Debtor apparently seeks to bridge this shortfall through a business venture entitled Freedom Fuels LLC ("Freedom Fuels"), from which he anticipates additional income of $1.000.00 per week.

However, assuming arguendo that the Debtor's Plan (including his proposed Freedom Fuels venture) was sufficient to satisfy the Estimated Priority Debt, the Court finds that the Debtor's Plan (as well as his proposed resources to cure its shortfall) is not feasible. It is axiomatic that a confirmable Chapter 13 plan must be feasible under the Bankruptcy Code. 11 U.S.C. § 1325(a)(6) ("the debtor will be able to make all payments under the plan and to comply with the plan."); *see In re Parisi*, No. 18-25689, 2019 Bankr. LEXIS 2815, at *5 (Bankr. D. N.J. Sept. 4, 2019). While "[a]ll Chapter 13 plans involve some degree of speculation . . . a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan." *In re Parker*, No. 04-40037, 2005 Bankr. Lexis 3029, at *3 (Bankr. D. Idaho Feb. 9, 2005). Aside from the Debtor's self-serving statements on the record as to the prospects of his various business ventures, he has provided no concrete evidence (e.g., pro forma business plans, commercial agreements, etc.) that provides the Court with any comfort that the Debtor's proposed income streams are anything

more than his optimistic visions of success — such visions, however well intended, will not suffice to confirm a Chapter 13 plan.

In addition to the financial insufficiency and the speculative nature of the Debtor's resources to support his Plan, there exist a series of circumstances surrounding the First Bankruptcy, the Second Bankruptcy, and the Debtor's Plan that, when viewed collectively, serve as additional indicia of bad faith. First, the Debtor failed to fulfill his obligations in the First Bankruptcy such that the case was converted from Chapter 11 to Chapter 7 for cause (*see* ECF No. 86, Case No. 22-20337), and perhaps most notably failed to make adequate protection payments to the Secured Creditors.[6] After the conversion of the First Bankruptcy, the Debtor also conducted an unauthorized sale of personal property and fixtures, which required Court intervention and needlessly stalled the liquidation of the Chapter 7 estate. Moreover, the Plan itself is fundamentally unfair to junior secured lenders behind CGB. Such lenders, including MMP, lack adequate protection, and under the Debtor's Plan their prospects of a financial recovery only diminish with the passage of time, the accrual of additional interest and fees, and a likely disposition of the Cove Road Property in a more uncertain real estate market. It is this Court's view that a core component of good faith "means treating creditors in a fundamentally fair manner," and that "when a Chapter 13 debtor seeks to extract too many benefits from the Chapter 13 process", such unfairness may indicate a bad faith filing. *See In re Wrobel*, 525 B.R. 211, 217–18 (Bankr. W.D.N.Y. 2018). It is difficult to see how the Debtor's plan as construed by this Court meets this fundamental requirement. Simply put, the Debtor has a history of non-performance in fulfilling his obligations as a debtor; when such non-performance is viewed collectively with the inadequacy of the Debtor's proposed Plan, the Court is not satisfied that the

---

[6] Notably, the Debtor's Plan does not propose any adequate protection payments to secured creditors despite a prior order of this Court requiring him to do so in his previous Chapter 11 case.

Debtor's petition was filed in good faith or that his vision of his new financial success is wholly credible.

Lastly, the Court is troubled by the rationale undergirding the Debtor's Motion. Although this Court does not *per se* bar concurrent bankruptcy petitions, it is heavily skeptical of such petitions. *See* Conn. L. R. Bankr. P. 1017-1. When faced with concurrent petitions, "a determination must be made in each case as to the bona fides of the second filing." *In re Peia*, 204 B.R. 310, 313 (Bankr. D. Conn. 1996). Unfortunately, the Court cannot discern a good faith, bona fide rationale as to this Second Bankruptcy. The Debtor has listed the Cove Road Property in his Schedules in both his First Bankruptcy and Second Bankruptcy; "[t]hus, two bankruptcy estates have scheduled the same interest in the same property, an oxymoronic result," which further supports a finding that this Second Bankruptcy was filed in bad faith. *Id* at 313–14. Moreover, the reimposition of the automatic stay on the Cove Road Property, as the Debtor has effectuated via the filing of his Second Bankruptcy, circumvents the force and effect of this Court's stay relief orders in the First Bankruptcy and thus "works an unconscionable fraud on creditors." *Id.* Indeed, the Debtor previously agreed to the liquidation of the Cove Road Property if the liquidation of the Spicer Mansion Property failed to satisfy his outstanding debts — as the Debtor and the Secured Parties stipulated, the liquidation of the Spicer Mansion Property indeed failed to satisfy those debts. *Supra* Part III ¶ 17. This Second Bankruptcy, with its purported creation of an overlapping bankruptcy estate and the reimposition of the automatic stay, unduly interferes with the efficient administration of the First Bankruptcy by the Chapter 7 Trustee, the advancement of the pending foreclosure appeals in the Superior Court, and the disbursements and allocation of sale proceeds from the sale of the Spicer Mansion Property, and thereby confuses, complicates, prejudices, and delays the due administration of the Debtor's

Chapter 7 estate. It is therefore difficult to construe this Second Bankruptcy as anything more than an attempt to renege (for yet a third time) on the Debtor's Foreclosure Stipulation with the Secured Creditors through the reimposition of the automatic stay based upon his last-ditch effort to advance a highly speculative Chapter 13 plan on the eve of a foreclosure sale of the Cove Road Property.[7]

## V. CONCLUSIONS

Concurrent bankruptcy proceedings as proposed by the Debtor present an untenable conflict of rights, estates, and duties and therefore are advisedly inappropriate. The Debtor's Motion shall accordingly be denied. The Court is further satisfied that sufficient circumstances exist for it to find that the instant bankruptcy case was not filed in good faith. Moreover, the Debtor's abrogation of prior orders, judgments, and agreements in this Court and in state court proceedings support a finding of bad faith and intent to hinder, delay, and ultimately frustrate the Secured Creditors in these proceedings and those of the First Bankruptcy.

Accordingly, MMP's Motion, as well as the supporting joinders filed by CGB, the Chapter 13 Trustee, and Dr. Owens shall each be granted insofar as they request dismissal of this case with prejudice. Accordingly, the Court shall impose a one (1) year bar against subsequent bankruptcy filings by the Debtor. Further, the Court's findings and reasoning in dismissing this case warrant the grant of the CGB Joinder insofar as it requests *in rem* relief against the Cove Road Property

---

[7] During a hearing held on June 29, 2023 as to the Debtor's Motion, the Debtor argued that there remained little beyond ministerial tasks in administering the First Bankruptcy such that filing of the Second Bankruptcy was not inappropriate. Those arguments were strongly rebuked by facts adduced by the Chapter 7 Trustee. On the aforesaid basis, the Court has concluded that the Trustee's administration of the First Bankruptcy requires more than her ministerial functions, and the Court is not satisfied the First Bankruptcy has sufficiently progressed that the Court can even seriously consider the efficacy of a subsequent bankruptcy.

19

In the exercise of its discretion, the Court is also satisfied that the efforts of the Debtor to formulate a last-chance Chapter 13 plan to save his home, while belated and ultimately insufficient, are marginally earnest and debatable enough under the law such that the imposition of sanctions on the Debtor and his counsel would be inappropriately punitive.  As such, MMP's Motion, as well as the supporting joinders filed by CGB and Dr. Owens, shall be denied insofar as they request the imposition of sanctions on the Debtor and his counsel.  The totality of facts and circumstances supporting the dismissal of this case is not sufficiently egregious.  The United States Supreme Court has repeatedly admonished lower courts to exercise "restraint and discretion" when invoking the authority to administer sanctions.  *See, e.g.*, *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44 (1991).

Accordingly, MMP's Motion, the CGB Joinder and Dr. Owen's Joinder are each **GRANTED** as to their respective requests to dismiss this case and for a one (1) year bar against subsequent bankruptcy petitions and **DENIED** as to their respective requests for sanctions.  CGB's Joinder, specifically its request for *in rem* relief against the Cove Road Property, is **GRANTED**.  The Chapter 13 Trustee's Joinder is **GRANTED**, and the Debtor's Motion is **DENIED**.  Separate orders effectuating the foregoing will promptly enter upon the docket.

**IT IS SO ADJUDGED, ORDERED, AND DECREED** at Hartford, Connecticut this 7th day of July 2023.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut